**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LAUREN ZEUNER** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  22-2381** |
| | : | |
| **DENIS MCDONOUGH, SECRETARY** | : | |
| **U.S. DEPARTMENT OF VETERNS** | : | |
| **AFFAIRS** | : | |

## MEMORANDUM

**MURPHY, J.**                                                                                           **June 7, 2023**

This case is about an employee of the U.S. Department of Veterans Affairs named Lauren Zeuner, who alleges that she experienced harassment, discrimination, and retaliation because of her disability.  After the VA removed her from her position because she was supposedly medically unable to do the job, she appealed and was reinstated by the Merit Systems Protection Board.  But after that, she was denied the ability to telework and, in essence, put in the corner and told to be quiet.

The complaint lays out Ms. Zeuner's story, and then states 21 separate counts of discrimination and retaliation.  The VA moved to dismiss the complaint for lack of specificity under *Twombly* and *Iqbal*, with a particular focus on what the VA says is Ms. Zeuner's failure to allege what the law requires — an adverse action such as, most typically, termination or a pay cut.  Fair to say, the VA identifies several weaknesses in the complaint.  But we must deny the motion to dismiss because at every turn, the VA relies on its own narrative rather than the allegations of the complaint, and fails to provide authority dispositive on the alleged facts of this case.

I.     **Factual Allegations**

The complaint in this case is a little hard to recapitulate concisely, at least in part because

it includes overlapping and repetitive counts.  The VA's brief adds its own confusion by counter-spinning the allegations, at times without citation, and at other times relying on attached documents that the VA says contradict the allegations in various ways.  In any event, what follows is taken from the complaint.  Ms. Zeuner worked for the VA at a Philadelphia-based medical center since 2015, where she consistently performed her job duties and received satisfactory performance ratings.  DI 1 ¶¶ 1, 16, 18.  She is disabled because she suffers from asthma, allergies, and chronic obstructive pulmonary disease.  *Id.* ¶¶ 1 & 17.

On several occasions from February to May 2019, Ms. Zeuner requested a reassignment as a reasonable accommodation.  *Id.* ¶¶ 3, 20.  The VA denied the request and removed her from her GS-7 position at the time for medical inability, effective May 17, 2019.  *Id.* ¶¶ 22, 48.  She appealed to the United States Merit Systems Protection Board (MSPB).  *Id.* ¶ 23.  On January 16, 2020, the MSPB reversed and ordered the VA to reinstate Ms. Zeuner and accommodate her by March 11, 2020.  *Id.* ¶ 24.  This case stems from the VA's actions following that order.

First, Ms. Zeuner did not return to work until March 17, 2020, and upon her return, the VA placed her in a temporary detail in a GS-6 step 10 position instead of a permanent GS-7 position.  *Id.* ¶¶ 25-26, 49.

Second, for the first four months after being reinstated, the VA did not give Ms. Zeuner e-mail or computer access, and required her to perform minimal job duties.  *Id.* ¶¶ 27-30.  Her supervisor told her that "there was nothing to do until she got computer access."  *Id.* ¶ 30.

Third, around March 30, 2020, Ms. Zeuner requested the ability to telework as a reasonable accommodation.  *Id.* ¶ 32.  The VA refused this request because her position could not be performed remotely, but then also moved her to another department that was not permitted to telework.  *Id.* ¶¶ 33-34.

Fourth, on April 16, 2020, Ms. Zeuner requested a copy of her SF-50 form so that she could apply to other government positions. *Id.* ¶¶ 35-37. The VA refused to provide the form until June 10, 2020. *Id.* ¶¶ 37-38.

Fifth, when Ms. Zeuner submitted her Employee's Statement Relative to Back Pay form on April 9, 2020, she opted not to have her health insurance reinstated for her back pay period. *Id.* ¶¶ 39-40. Contrary to her request, the VA retroactively reinstated her health insurance, and the government deducted money from Ms. Zeuner's paychecks to cover the retroactive monthly premiums. *Id.* ¶¶ 41-43.

Sixth, after she returned to work, Ms. Zeuner requested that her health insurance coverage be reinstated going forward, effective March 11, 2020. *Id.* ¶ 44. Contrary to her request, Ms. Zeuner learned in May 2020 that her health insurance was inactive. *Id.* ¶¶ 45-46.

Seventh, and finally, on September 23, 2020, the VA informed Ms. Zeuner that it could not identify a permanent GS-7 position and the only position it could offer her was a GS-4 position. *Id.* ¶¶ 47-48. The VA also informed Ms. Zeuner that she was not qualified for the GS-6 step 10 position to which she was temporarily detailed, in spite of Ms. Zeuner being qualified for her previous GS-7 position. *Id.* ¶¶ 49-52.

## II.     The VA's Motion to Dismiss

Based upon the allegations discussed above, Ms. Zeuner sued the VA for 21 separate violations of the Rehabilitation Act: ten counts of disability discrimination, ten counts of retaliation, and one count of failure to provide reasonable accommodations. Ms. Zeuner organized the counts in pairs, alleging both discrimination and retaliation for 10 instances of conduct. The VA moves to dismiss each aspect of the complaint, albeit with varying degrees of explanation. The arguments might be best summarized in a table.

| Count | Gist of Count (with reference to DI 1) | VA's Dismissal Argument (with reference to DI 6) |
|---|---|---|
| 1 & 11 | Discrimination / Retaliation: VA failed to return Ms. Zeuner to work on March 11, 2020. DI 1 ¶¶ 53-56, 93-96. | Ms. Zeuner was reinstated to the same position and pay, so there was no adverse employment action or other action that would dissuade a reasonable employee from engaging in protected activity.  DI 6 at 7-9.<br><br>Also, claim based on factual inaccuracies and stated in conclusory fashion.  *Id.* at 13-14. |
| 2 & 12 | Discrimination / Retaliation: VA refused to place Ms. Zeuner in a permanent position.  *Id.* ¶¶ 57-60, 97-100. | Ms. Zeuner's detail assignment was not adverse because it did not affect her status and pay, and was merely to accommodate her disability.  *Id.* at 9-11.<br><br>Also, claim based on factual inaccuracies and stated in conclusory fashion.  *Id.* at 13-14. |
| 3 & 13 | Discrimination / Retaliation: VA denied Ms. Zeuner access to work resources.  *Id.* ¶¶ 61-64, 101-04. | Inadequate allegations that denial of computer resources was motivated by discriminatory or retaliatory intent.  *Id.* at 15-16. |
| 4 & 14 | Discrimination / Retaliation: VA refused to assign Ms. Zeuner duties. *Id.* ¶¶ 65-68, 105-08. | Inadequate allegations that denial of job duties was motivated by discriminatory or retaliatory intent. *Id.* at 15-16. |
| 5 & 15 | Discrimination / Retaliation: VA denied Ms. Zeuner's request to telework. *Id.* ¶¶ 69-72, 109-12. | Inadequate allegations that denial of telework was motivated by discriminatory or retaliatory intent. *Id.* at 15-16. |
| 6 & 16 | Discrimination / Retaliation: VA refused to provide Ms. Zeuner with SF-50. *Id.* ¶¶ 73-76, 113-16. | Slight delay in providing SF-50 was not an adverse employment action or other action that would dissuade a reasonable employee from engaging in protected activity.  *Id.* at 11.<br><br>Also, claim based on factual inaccuracies and stated in conclusory fashion.  *Id.* at 13-14. |
| 7 & 17 | Discrimination / Retaliation: VA retroactively reinstated Ms. Zeuner's health care coverage. *Id.* ¶¶ 77-80, 117-20. | Complaint provides no basis from which to infer that allegations give rise to discrimination or retaliation, or how events were caused by protected activity.  *Id.* at 16. |
| 8 & 18 | Discrimination / Retaliation: VA failed to submit documentation to reinstate Ms. Zeuner's health care coverage. *Id.* ¶¶ 81-84, 121-24. | Complaint provides no basis from which to infer that allegations give rise to discrimination or retaliation, or how events were caused by protected activity.  *Id.* at 16. |

| Count | Gist of Count (with reference to DI 1) | VA's Dismissal Argument (with reference to DI 6) |
|---|---|---|
| 9 & 19 | Discrimination / Retaliation: VA made unauthorized deductions from Ms. Zeuner's paychecks. *Id.* ¶¶ 85-88, 125-28. | Complaint provides no basis from which to infer that allegations give rise to discrimination or retaliation, or how events were caused by protected activity. *Id.* at 16. |
| 10 & 20 | Discrimination / Retaliation: VA subjected Ms. Zeuner to a hostile work environment. *Id.* ¶¶ 89-92, 129-32. | Viable allegations, taken together, are insufficiently severe or pervasive to create an abusive environment, nor is claim stated with adequate specificity to show intent. *Id.* at 12-13.<br><br>Also, claim based on factual inaccuracies and stated in conclusory fashion. *Id.* at 13-14. |
| 21 | Failure to provide reasonable accommodations. *Id.* ¶¶ 133-36. | Potential accommodations (telework and remaining in her position) not adequately alleged as reasonable accommodations. *Id.* at 14-15. |

The VA in part relies on several exhibits, including the MSPB order (DI 6-4) as well as Ms. Zeuner's SF-50 forms (DI 6-1, 6-2, 6-3), which are said to contradict certain allegations. The VA argues that we may consider these "undisputedly authentic document[s]" in aid of dismissal, or if not, then we should enter summary judgment on that limited record. DI 6 at 4-6.

In response to the VA's motion, Ms. Zeuner argues that the VA improperly discounted the factual allegations preceding the enumerated counts. Ms. Zeuner both disputes the VA's interpretation of the SF-50 forms and argues that the delay in return to duty, temporary detail assignment, and delay in providing the SF-50 are independently actionable. With respect to the hostile workplace claim, Ms. Zeuner argues that the totality of the allegations are sufficient. And as for failure to accommodate, Ms. Zeuner points to allegations that, among other things, the VA denied telework despite doctor's notes recommending it because of risks for COVID-19 complications related to her disability. Ms. Zeuner responds to the remaining arguments for dismissal by attempting to show how the facts as alleged allow for an inference that the VA intentionally acted against Ms. Zeuner in retaliation for her victory at the MSPB. Finally, Ms.

Zeuner argues that it would be premature and prejudicial to enter summary judgment before discovery, and provides a declaration under Rule 56(d) showing discovery she needs to adduce facts essential to her opposition.  *See* DI 11-1.

For the reasons set forth below, we will deny the VA's motion to dismiss.

### III.   <u>Standard of Review</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021).  Deciding whether a complaint is facially plausible is "context-specific, requiring the reviewing court to draw on its experience and common sense."  *Iqbal*, 556 U.S. at 663-64.

"Assessing plausibility under *Twombly* and *Iqbal* is a three-step process."  *McDermid v. Inovio Pharms., Inc.*, 520 F. Supp. 3d 652, 661 (E.D. Pa. 2021).  "The first step in that process requires an articulation of the elements of the claim."  *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327 (3d Cir. 2022).  The second step is "identify[ing] those allegations that, being merely conclusory, are not entitled to the presumption of truth."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).  Courts do not grant the presumption of truth to allegations that are "so threadbare or speculative that they fail to cross the line between the conclusory and the factual."  *Id.* at 790.  The third step asks courts to assume the veracity of any well-pleaded factual allegations to "determine whether they plausibly give rise to an entitlement to relief."  *McDermid*, 520 F. Supp. 3d at 661 (quoting *Connelly*, 809 F.3d at 787).

IV.    <u>**Analysis**</u>

We take up the VA's arguments in the same order it presented them.

A.    <u>**The VA has not shown that Ms. Zeuner's complaint insufficiently states an adverse action.**</u>

Ms. Zeuner's complaint must at least establish that she "(1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an adverse employment action because of that disability." *Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 611 (3d Cir. 2006) (cleaned up); *see Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 282–83 (3d Cir. 2012) ("the substantive standards for determining liability under the Rehabilitation Act and the ADA are the same"). An adverse action is one "that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Komis v. Sec'y of U. S.s Dep't of Lab.*, 918 F.3d 289, 292 (3d Cir. 2019) (quoting *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015)). Such employment decisions are not limited to economic or tangible discrimination, although there must be identifiable consequences. *Id.* at 292-93. Retaliation, too, requires an adverse action. *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006). The standard is somewhat different because "[u]nlike the antidiscrimination provision, the antiretaliation provision is not limited to employer action that affects the terms and conditions of a claimant's employment." *Komis*, 918 F.3d at 293. To make out a claim of retaliation, a plaintiff must show "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).

The VA attacks counts 1, 2, 6, 11, 12, and 16 of the complaint by arguing that because Ms. Zeuner's position and pay were reinstated by the MSPB, she cannot have suffered an

adverse action.  Although Ms. Zeuner suggests the SF-50 form may not be as straightforward as it seems,[1] she does not appear to dispute the VA's basic contention that her pay and position were reinstated.  Regardless, she argues that there were adverse employment actions other than loss of pay or status: she was not permitted to perform duties for a week; she was relegated to an inferior temporary detail; and her SF-50, necessary to seek other federal jobs, was unduly withheld.  *See* DI 11 at 9-13.  The VA flatly claims that "[a]bsent loss of pay, plaintiff cannot make out a case of discrimination," DI 6 at 8, but does not back up that proposition with clear precedent.[2]  To be sure, "direct economic harm is an important indicator of a tangible adverse employment action."  *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 153 (3d Cir. 1999).  But "it is not the sine qua non."  *Id.*  "If an employer's act substantially decreases an employee's earning potential and causes significant disruption in his or her working conditions, a tangible adverse employment action may be found."  *Id.*  In *Durham*, the Third Circuit traced a link between various non-economic harms and a drop in earnings.  *Id.* at 153-54.  Here, although the case is stronger for retaliation than discrimination, the linkage is admittedly not as clear as it was in *Durham*.  Nonetheless, this case is at the pleadings stage, and we will not foreclose development of an evidentiary record based on the VA's authorities.  The VA has not demonstrated grounds for dismissal on the basis of a lack of adverse employment action.

### B.    <u>The VA has not shown that Ms. Zeuner inadequately stated her hostile work environment claims.</u>

---

[1] In deciding this motion, we considered the exhibits submitted by the parties, but we did not find them particularly enlightening in the absence of a full evidentiary record.  For the same reason, we refuse the VA's request to treat the motion to dismiss as a summary judgment motion. Plaintiff amply demonstrated what discovery might show in this case.  *See* DI 11 at 19-22.

[2] The only binding authority the VA cites for this proposition is *Burlington*, but *Burlington* does not so hold; the VA's own parenthetical quote from *Burlington* highlights the qualifier "in most cases."  DI 6 at 8.

Among other things, Ms. Zeuner's hostile workplace claims (counts 10 and 20) require plausible allegations that she was "subject to unwelcome harassment" based on her disability, request for an accommodation, or other protected activity, and that the "harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment." *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999) (cleaned up).

The VA first argues that the alleged adverse actions do not add up to a hostile workplace:

> Being paid even though not called into the office, being provided the SF-50 form once corrections were made, being assigned to a detail that has no detrimental effect on pay or benefits, and being offered (but not forced to accept) a lower grade position (Compl. ⁋ 48) consistent with the MSPB order, do not create a hostile environment even if taken as a whole.

DI 6 at 12. This is a rather combative and reductionist counter-narrative to what the complaint alleges. Not a bad spin, but a motion to dismiss must be premised on a plaintiff's allegations and the fair inferences that arise from them, and here, Ms. Zeuner's allegations are considerably more involved than the VA suggests. *See* DI 11 at 13-14 (citing DI 1 at ¶¶ 27-51). Furthermore, and most importantly for the task at hand, the VA's sole authority, *Weston v. Pennsylvania*, provides limited insight into whether the sum of Ms. Zeuner's allegations meets the "sufficiently severe or pervasive" standard because it reversed a district court's dismissal of hostile work environment claims under the pre-*Twombly* pleading standard. *See* 251 F.3d 420, 429-430 (3d Cir. 2001) (questioning the merits of a hostile workplace claim, but reversing and remanding with instructions to permit further discovery).

The VA next urges dismissal because Ms. Zeuner failed to allege:

> who allegedly created a hostile environment, who knew of plaintiff's disability and/or protected conduct, what facts indicated hostility (instead of efforts to accommodate, or required administrative steps), where or when or by whom allegedly hostile or offensive comments were made, or indeed any details from which the Court could infer that plaintiff has pled a viable claim of hostile work

9

environment based on disability discrimination or retaliation.

DI 6 at 12.  These seem like fair questions, but as authority requiring that they all be answered in

a complaint, the VA provides the "example" of a Southern District of New York district court's

grant of summary judgment on a hostile workplace claim stemming from denial of telework and

parking requests and occasional exposure to noxious fumes.  *See Edwards v. Wilkie*, 2020 WL

2792997, at \*14 (S.D.N.Y. May 29, 2020).  Setting aside the summary judgment posture of the

case, we cannot discern how *Edwards* supports the VA's proposed pleading requirements quoted

above, nor do we see the factual analogy to our case, which involves numerous allegations

beyond those involved in *Edwards*.  Ms. Zeuner's complaint names several individuals

responsible for the alleged harassment, states what they did, and alleges that the conduct was

harassing and retaliatory.  DI 1 ¶¶ 32-33, 37-38, 41, 47-51.

Third, the VA says that *Peace-Wickham v. Walls* requires dismissal here because Ms.

Zeuner "has certainly not alleged that her workplace was 'permeated with discriminatory

intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of

[plaintiff's] employment and create an abusive working environment.'"  DI 6 at 13 (quoting

*Peace-Wickham v. Walls*, 409 F. App'x 512, 519 (3d Cir. 2010)).  *Peace-Wickham* was a race

discrimination case in which the Third Circuit affirmed a grant of summary judgment because

the plaintiff could not establish vicarious liability on the part of her employer.  409 F. App'x at

519.  That is (as far as we know) not an issue in this case, and on the substantive hostile

workplace question, we note that in *Peace-Wickham*, the district court "determined that a

reasonable jury could find that severe or pervasive discrimination existed" in view of incidents

reflecting racial tension.  *Id.*

Finally, under a separate heading toward the end of its brief, the VA offers a short catch-

all argument that counts 1, 2, 6, 10, 11, 12, 16, and 20 of Ms. Zeuner's complaint should be

dismissed because they "do[] not contain any facts to raise a plausible inference that her treatment at work was motivated by her alleged disability (asthma and COPD), or by protected conduct." DI 6 at 14. We disagree. The complaint states that Ms. Zeuner's supervisor both knew of Ms. Zeuner's disability-related problems (she was a witness in the MSPB case) and was involved with the decisions that Ms. Zeuner found harassing and adverse. DI 1 ¶¶ 19, 32–33, 37–38, 41, 47, 50. Considering the totality of the circumstances, the timing, and the context of the MSPB case, we think there is a fair inference of a causal nexus sufficient at the pleadings stage. *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196-97 (3d Cir. 2015). The VA relies on Judge Baylson's opinion in *Miller v. Weaver*, but the VA did not mention that *Miller* dismissed a complaint consisting of two hand-written sentences. *See* No. 21-cv-4484, Complaint, DI 2 at 3 (E.D. Pa. Oct. 12, 2021). *Miller* sheds little light on this case.

The VA's critique of the complaint in this case is reasonable enough. But that is as far as it goes because the VA has not demonstrated a firm legal basis for dismissal of the hostile workplace claims.

**C.   The VA does not show that Ms. Zeuner inadequately stated her failure to provide reasonable accommodations count.**

The VA last turns to count 21,[3] arguing that Ms. Zeuner failed to properly allege a failure to accommodate because Ms. Zeuner was not able to perform the essential functions of her job with the purported reasonable accommodation of telework. DI 6 at 14-15. "Discrimination . . . encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also

---

[3] The VA tucks two or three more paragraphs of arguments under its heading for count 21 that confusingly address counts 3, 4, 5, 7, 8, 9, 13, 14, 15, 17, 18, and 19. DI 6 at 15-16. It is unclear if these arguments are meant to relate to count 21 — they do not appear to. The VA presents these final arguments without any legal authority. The gist of it is to ask us to "throw these counts out too while you're at it." We will not.

includes failing to make reasonable accommodations for a plaintiff's disabilities." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999). Among other things, Ms. Zeuner must show that she is "qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer." *Gaul v. Lucent Techns.*, 134 F.3d 576, 580 (3d Cir. 1998).

With respect to Ms. Zeuner's qualifications, the VA claims that "plaintiff acknowledges that the VA found her unqualified to perform the essential duties of [her] position." DI 6 at 15 (citing DI 1 at ¶ 50). The VA's argument misrepresents the allegations of the complaint, which reflect only an allegedly incorrect comment from Ms. Zeuner's supervisor about how two other supervisors felt:

> 50. Stanley responded: "They don't feel you're qualified," referring to HAS supervisors Burnett and Shirin Mathai.
>
> 51. On the contrary, Plaintiff was qualified for the MSA position, which requires 1 year above high school education. Plaintiff has a bachelor's degree. Additionally, she had more than 52 weeks of experience at the GS-7 level.

DI 1 ¶¶ 50-51; *see also id.* ¶ 18 (alleging that Ms. Zeuner can perform her job duties in spite of her disabilities and that she consistently received satisfactory performance ratings). The VA argues that Ms. Zeuner's "own self-serving allegation that she was qualified is insufficient to support a claim." DI 6 at 15. Why not? The VA does not answer that question with any legal authority. Instead, the VA points to decisions holding that an employer is not required to create new positions to accommodate employees with disabilities. *E.g.*, *Buskirk v. Apollo Metals*, 307 F.3d 160, 169 (3d Cir. 2002). True enough, but what Ms. Zeuner wants is her old job back, with the allegedly reasonable accommodation of telework. DI 11 at 11-12. In any event, the real answer will require development of the record. The VA has not provided a good reason to dismiss count 21.

V.  **<u>Conclusion</u>**

      For the reasons explained above, we deny the VA's motion to dismiss (and, to the extent it was presented, the VA's alternative motion for summary judgment).